## 07 CV 10352

Sean F. Kane (SK 4568)
DRAKEFORD & KANE LLC
475 Park Avenue South, 15th Floor
New York, New York 10016
(212) 696-0010
*Attorneys for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------x
THE ORIGINAL LOG CABIN HOMES LTD.,    :
(A New York Corporation)              :
THE ORIGINAL LOG CABIN HOMES LTD.     :
(A Delaware Corporation)              :
                                      :
                Plaintiffs            :
                                      :
            v.                        :
                                      :
LOG CABIN HOMES USA,                  :
SPECIALTY WHOLESALERS,                :
DAVID DEHART, EDMUND DEHART,          :
ALGIE DEHART, JOHN DOES               :
1 THROUGH 10 AND JOHN DOE             :
CORPORATIONS 1 THROUGH 10,            :
                                      :
                Defendant.            :
-----------------------------------------------x
```

**COMPLAINT**

Case No.

Plaintiffs, The Original Log Cabin Homes Ltd. (New York) and The Original Log Cabin Homes Ltd. (Delaware) (collectively referred to herein as "ORIGINAL"), by its attorneys, files this Complaint against Defendants, Log Cabin Homes USA, Specialty Wholesalers, David DeHart ("DeHart"), Edmund DeHart, Algie DeHart, John Does 1 through 10 and John Doe Corporations 1 through 10 (collectively referred to herein as "USA"). In support of its causes of action, ORIGINAL states as follows:

## INTRODUCTION

1.      ORIGINAL's business is the manufacture, sale and construction of custom log cabin homes and related products in the United States and internationally.  Defendants are purportedly also engaged in the manufacture, sale and construction of log cabin homes.

2.      Within the last year DeHart left the longtime employ of ORIGINAL and founded USA.  It has recently been discovered that prior to leaving, DeHart took various ORIGINAL copyright protected and proprietary documents and information including product renderings, floor plans, customer information and marketing materials.

3.      ORIGINAL has learned that Defendants now market products through the use of a website with the domain name WWW.LOGCABINHOMESUSA.COM which is substantially similar to ORIGINAL's preexisting domain name, WWW.LOGCABINHOMES.COM.  Infact, the name Log Cabin Homes USA, which Defendants are attempting to do business under, is a trade name that ORIGINAL has used in the past in connection with its products and services.  Additionally, with the exception of three log cabin home models, all of the models offered by USA are exactly the same as ORIGINAL's proprietary designs.  Moreover, the architectural renderings and floor plans available on the USA website are actually complete copies of ORIGINAL's copyright protected property.  The only apparent changes made to ORIGINAL's copyright protected materials was that USA changed the name of the models being offered and added its own logo to the ORIGINAL materials.  Additionally, the Materials List and Sales Agreement on USA's website are substantially similar to ORIGINAL's documents.  Finally, USA's website contains pictures of homes manufactured, sold and constructed by ORIGINAL but misleads customers by a written statement into believing that these homes were actually manufactured by USA.

-2-

4.      This dispute involves, among other things, copyright infringement and false and misleading claims and actions made by USA through a variety of media, including, but not limited to, marketing materials, the products themselves and the Internet.  Additionally, the claims arise out of USA's usurpation of ORIGINAL's corporate assets and interference with its contracts and business relationships. USA's false and misleading claims and other nefarious actions have damaged and continue to cause damage to ORIGINAL.

5.      USA's recent actions have undermined any notion of fair competition.  Despite obvious knowledge of its wrongdoing, USA has engaged in and continues to engage in copyright infringement, the making of false, unsubstantiated claims, and engaging in actions intended to damage ORIGINAL's business.

6.      By making unauthorized duplications of ORIGINAL's copyright protected works, USA has violated the Copyright Act, 17 U.S.C. §101 *et seq*.  Moreover, by disseminating false and misleading advertising, USA has violated the federal Lanham Act, 15 U.S.C. § 1125(a), the New York unfair or deceptive practices statute, N.Y. GEN. BUS. LAW §§ 349, 350, and other New York common law.  These actions have caused irreparable harm to ORIGINAL.  The public interest demands that USA be enjoined from continuing these blatant infringements and false and deceptive advertisements to prevent irreparable injury to ORIGINAL's brand name and reputation.

## PARTIES

7.      Plaintiff The Original Log Cabin Homes Ltd. is a New York corporation with its principal place of business at 475 Park Avenue South, New York, New York 10016.  The Original Log Cabin Homes Ltd. is an affiliate of Plaintiff The Original Log Cabin Homes Ltd. a Delaware entity with its principal place of business at 513 Keen Street, P.O. Drawer 1457,

-3-

Rocky Mount, North Carolina 27802. ORIGINAL is principally engaged in the manufacture and sale of custom prefabricated log homes and related products throughout the United States and internationally. The legacy of the American log home – beauty, simplicity, and quality natural materials – has been brought up to date by ORIGINAL with use of the latest in technology and design. In 1987 ORIGINAL started in Rocky Mount, North Carolina with one simple goal: To manufacture the best log homes in the world. Traditional concepts combine with state-of-the-art technology and techniques in all of ORIGINAL's designs, bringing together the best of old and new in a variety of comfortable, affordable, and infinitely variable designs. ORIGINAL's extensive selection of homes includes something to match almost any budget or taste, and ORIGINAL's understanding of the possibilities of log home construction allows it to maximize the beauty, versatility, and energy efficiency of natural wood in every ORIGINAL log cabin home. With its roots firmly planted in the American tradition of log home living, ORIGINAL has developed a worldwide reputation for quality, innovation, and service. That's why you'll find ORIGINAL's homes all over the United States and in more than 50 countries around the world.

8. Defendant Log Cabin Homes USA is believed to be an unincorporated entity with its principal place of business at 3075-A Airport Circle, Wilson, North Carolina. USA is also purportedly engaged in the manufacture and sale of custom prefabricated log homes and related products throughout the United States and internationally.

9. Defendant, Specialty Wholesalers, is also believed to be an unincorporated entity with its principal place of business at 7016 Landrush Rd., Sims, North Carolina 27880. According to the USA website Specialty Wholesalers is a division of Log Cabin Homes USA.

-4-

10. Defendant, David DeHart, is an individual with a principal place of residence at 7016 Landrush Rd., Sims, North Carolina 27880. DeHart is listed as the founder of Log Cabin Homes USA on its website. Prior to founding USA DeHart was employed by ORIGINAL as it's International President.

11. Defendant, Edmund DeHart, is an individual with a principal place of residence at 7518 Rock Ridge School Rd., Kenly, North Carolina 27542. Edmund DeHart is listed as the President of Log Cabin Homes USA on its website. Edmund DeHart was previously employed by ORIGINAL from 1995 to 2000.

12. Defendant, Algie DeHart, is an individual with a principal place of residence at 7016 Landrush Rd., Sims, North Carolina 27880. Upon information and belief Algie DeHart is and officer, director or owner of Specialty Wholesalers and Log Cabin Homes USA.

13. Upon information and belief, Defendants, John Does 1 through 10, are individuals whose names and places of residence are currently unknown.

14. Upon information and belief, Defendants, John Doe Corporations 1 through 10, are corporations or other business entities whose names and principal places of business are currently unknown.

## JURISDICTION

15. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 *et seq*. and 28 U.S.C. §§ 1331, 1338 and 1367 because the action includes claims for violations of the Lanham Act, Copyright and Trademark laws and related state law claims.

Case 5:07-cv-00504-FL   Document 1   Filed 11/15/07   Page 5 of 26

## VENUE

16.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400 because the defendant conducts business in this District and a substantial part of the property subject to this action resides in this District.

## FACTS

17.     For the past twenty (20) years ORIGINAL's business has been the manufacture, sale and construction of custom log cabin homes and related products in the United States and internationally.

18.     From June 22, 1995 until November 28, 2006, DeHart was employed by ORIGINAL as International President.  As part of this position, DeHart had access to all of ORIGINAL's confidential and proprietary information including its product renderings and floor plans, marketing materials and customer information.

19.     Recently ORIGINAL learned that DeHart had started Log Cabin Homes USA as a company to compete with ORIGINAL in the custom log cabin home space.  Log Cabin Homes USA advertises and markets its log cabin home products through various media, including, but not limited to, brochures and the Internet.

20.     ORIGINAL has learned that USA had made and is using copies of ORIGINAL's copyright protected designs and marketing materials as part of its business activities.

21.     Additionally, ORIGINAL has learned that USA has contacted and convinced various ORIGINAL customers to breach their agreements with ORIGINAL, and/or lead customers to believe that orders placed with USA are actually being placed with ORIGINAL.

22.     Through various media, as set forth below, USA has made numerous misrepresentations and engaged in nefarious acts designed to advance USA at the cost of ORIGINAL.

23.     USA's false and misleading marketing campaign has damaged ORIGINAL and is likely to continue to cause customer confusion as to the origin of USA's products and to cause consumers to mistakenly purchase USA's products instead of ORIGINAL's homes.

**ORIGINAL's Marks**

24.     On December 4, 1992 ORIGINAL filed a trademark application in the United States Patent and Trademark Office for the Service Mark "THE ORIGINAL LOG CABIN HOMES," (the "Mark") as used in connection with the "manufacture of buildings in kit form for assembly by others; sale of building materials manufactured by others."  The Mark was duly registered as of September 19, 1995 and the U.S. registration number of this mark is 1,920,361.

25.     On February 14, 1996 ORIGINAL obtained the domain name WWW.LOGCABINHOMES.COM.  Since on or about that time, ORIGINAL has maintained a website at the above domain name for the purpose of marketing its custom log cabin homes and related products.

26.     Since in or about 1989, ORIGINAL has used the name Log Cabin Homes USA in relation to its various international business and customer dealings.  As the International President, DeHart was well aware of ORIGINAL's use of the name Log Cabin Homes USA.

**USA's Unlawful Conduct**

27.     Sometime within the last year, DeHart commenced using the name Log Cabin Homes USA in commerce to identify and offer its log cabin homes products. The Corporate

Database for the State of North Carolina shows no record for the formation of USA, therefore the parties understand and believe that USA was never properly incorporated.

28.     Upon     information     and     belief,     the     domain     name "WWW.LOGCABINHOMESUSA.COM" was registered by DeHart in the name of Specialty Wholesalers on or about January 16, 2007. The Corporate Database for the State of North Carolina shows no current entity doing business under the name Specialty Wholesalers, therefore the parties understand and believe that Specialty Wholesalers is not currently incorporated. The only entities with substantially the name Specialty Wholesalers were dissolved 14 and 20 years ago, respectively. That being said, DeHart currently utilizes this website to advertise and offer for sale its log cabin home products throughout the United States and Internationally.

29.     In October 2007 ORIGINAL first became aware that a company using the name USA was offering log cabin home products. After engaging in due diligence ORIGINAL was able to identity the parties behind USA and confirm that the marketing materials are identical to those owned by ORIGINAL.

**"USA's Model" Claims**

30.     USA falsely claims in a variety of media, including, but not limited to, the Internet, that its offers twelve (12) different proprietary designs of log cabin homes. Of these various designs, nine of them are exact copies of copyrighted designs owned by ORIGINAL.

31.     Comparison of the architectural rendering and the floor plan for the USA home model named Allegany and those for ORIGINAL's Chesapeake model demonstrate that they are exactly the same. Even a cursory review of the two models demonstrate that USA merely scanned ORIGINAL's rendering and floor design and just changed the name. ORIGINAL's

-8-

Chesapeake design and floor plan is used on ORIGINAL's website and is contained in a brochure subject to a copyright registration TX 5-941-341 effective July 9, 2003.

32.     Comparison of the architectural rendering and the floor plan for the USA home model named Arvada and those for ORIGINAL's Cedarbrook model demonstrate that they are exactly the same.  Even a cursory review of the two models demonstrate that USA merely scanned ORIGINAL's rendering and floor design and just changed the name.  ORIGINAL's Cedarbrook design and floor plan is used on ORIGINAL's website and is contained in a brochure subject to a copyright registration TX 4-671-955 effective October 09, 1997 and a brochure subject to a copyright registration TX 5-941-341 effective July 9, 2003.

33.     Comparison of the architectural rendering and the floor plan for the USA home model named Breckenridge and those for ORIGINAL's Woodland model demonstrate that they are exactly the same.  Even a cursory review of the two models demonstrate that USA merely scanned ORIGINAL's rendering and floor design and just changed the name.  ORIGINAL's Woodland design and floor plan is used on ORIGINAL's website and is contained in a brochure subject to a copyright registration TX 4-671-955 effective October 09, 1997 and a brochure subject to a copyright registration TX 5-941-341 effective July 9, 2003.

34.     Comparison of the architectural rendering and the floor plan for the USA home model named Bristol and those for ORIGINAL's Mayfield model demonstrate that they are exactly the same.  Even a cursory review of the two models demonstrate that USA merely scanned ORIGINAL's rendering and floor design and just changed the name.  ORIGINAL's Mayfield design and floor plan is used on ORIGINAL's website and is contained in a brochure subject to a copyright registration TX 4-671-955 effective October 09, 1997 and a brochure subject to a copyright registration TX 5-941-341 effective July 9, 2003.

-9-

35.    Comparison of the architectural rendering and the floor plan for the USA home model named Chalet and those for ORIGINAL's Hideaway I model demonstrate that they are exactly the same.  Even a cursory review of the two models demonstrate that USA merely scanned ORIGINAL's rendering and floor design and just changed the name.  ORIGINAL's Hideaway I design and floor plan is used on ORIGINAL's website and is contained in a brochure subject to a copyright registration TX 4-671-955 effective October 09, 1997 and a brochure subject to a copyright registration TX 5-941-341 effective July 9, 2003.

36.    Comparison of the architectural rendering and the floor plan for the USA home model named Colorado and those for ORIGINAL's Dakota model demonstrate that they are exactly the same.  Even a cursory review of the two models demonstrate that USA merely scanned ORIGINAL's rendering and floor design and just changed the name.  ORIGINAL's Dakota design and floor plan is used on ORIGINAL's website and is contained in a brochure subject to a copyright registration TX 4-671-955 effective October 09, 1997 and the Dakota rendering also appears in a brochure subject to a copyright registration TX 5-941-341 effective July 9, 2003.

37.     Comparison of the architectural rendering and the floor plan for the USA home model named Galloway and those for ORIGINAL's Raleigh model demonstrate that they are exactly the same.  Even a cursory review of the two models demonstrate that USA merely scanned ORIGINAL's rendering and floor design and just changed the name.  ORIGINAL's Raleigh design and floor plan is used on ORIGINAL's website and is contained in a brochure subject to a copyright registration TX 5-941-341 effective July 9, 2003.

38.    Comparison of the architectural rendering and the floor plan for the USA home models named Getaway I & II and those for ORIGINAL's Cabin I & II models demonstrate that

-10-

they are exactly the same. Even a cursory review of the two models demonstrate that USA merely scanned ORIGINAL's rendering and floor designs and just changed the name. ORIGINAL's Cabin I & II designs and floor plans are used on ORIGINAL's website and is contained in a brochure subject to a copyright registration TX 5-941-341 effective July 9, 2003.

39.     Comparison of the architectural rendering and the floor plan for the USA home model named Outer Banks and those for ORIGINAL's Hatteras model demonstrate that they are exactly the same. Even a cursory review of the two models demonstrate that USA merely scanned ORIGINAL's rendering and floor design and just changed the name. In this instance the name change itself was not even original, not that any of the previous names were substantially new either, since Hatteras is a North Carolina island located in the area referred to as the Other Banks. ORIGINAL's Hatteras design and floor plan is used on ORIGINAL's website and is contained in a brochure subject to a copyright registration TX 4-671-955 effective October 09, 1997 and a brochure subject to a copyright registration TX 5-941-341 effective July 9, 2003.

40.     The above-referenced infringing uses appear on USA's website WWW.LOGCABINHOMESUSA.COM under the link entitled "Floor Plans". The original copyright protected rendering and floor plans can be viewed at ORIGINAL's website WWW.LOGCABINHOMES.COM under the link "View Home Designs and Floorplans", as well as part of ORIGINAL's copyright protected marketing brochures.

41.     Upon information and belief, USA also has a brochure featuring infringing copies of the above referenced renderings and floor plans owned by ORIGINAL.

42.     USA's site also contains apparent copies of ORIGINAL's Materials List and Agreement. The Materials List and Agreement on USA website are substantially similar to the documents created and owned by ORIGINAL. There are only minor wording and formatting

differences in the USA document and the ORIGINAL documents. Said documents appear on the USA website under the link "Materials List". Since ORIGINAL created these documents they are due copyright protection of their works.

43.     USA has marketed its products using the abovementioned infringing and misleading methods throughout the United States and internationally.

**"Built by USA" Claims**

44.      USA's website, reachable at WWW.LOGCABINHOMESUSA.COM, consists of approximately 12 different main pages. On the page entitled PHOTOS there are 13 photos of various exteriors and interiors of different log cabin homes. These photos are labeled Nos. 1 - 4, 6, 7, and 9 – 15. Additionally, there are two photos, labeled Nos. 5 and 8, which appear to be scenic vista shots containing log cabin homes. The page also contains the heading ***"These images are an assortment of houses that we have built on our site at Riverview Park in South West Scotland and for other clients on their own land."***

45.     USA's above statement is a blatant, willful and knowing misrepresentation. All of the homes showcased in the fifteen photos discussed in the preceding paragraph were actually manufactured, sold and/or constructed by ORIGINAL and not USA. Moreover, the site depicted in South West Scotland is the site where custom log cabin homes marketed and sold by ORIGINAL have been built.

46.     While advertising may contain some small amount of puffery concerning the nature of a product, it must be adequately qualified to avoid consumer deception about the origin or elements of the product.

47.     USA has failed to qualify in any way its express and implied Built by USA claims to reflect the fact that they were marketed, manufactured and sold by ORIGINAL.

-12-

48. Based on USA's product claims, consumers have a reasonable expectation that the photos of the log cabin homes contained at USA's website, reachable at WWW.LOGCABINHOMESUSA.COM, are, in fact, homes that were manufactured and sold by USA. Because USA lacks any reasonable basis to substantiate its claims that the log cabin homes on its website are "*houses that we have built on our site at Riverview Park in South West Scotland and for other clients on their own land*", consumers are deceived by this misrepresentation.

**ORIGINAL's Customers**

49. Upon information and belief, DeHart on behalf of USA has utilized the proprietary customer information he has wrongfully taken from ORIGINAL and has contacted existing customers and potential customers. ORIGINAL has learned that USA is currently doing business with various ORIGINAL customers, including but not limited to, Riverview Park Ltd. and Valhalla Log Homes. Upon information and belief, there are other ORIGINAL customers that USA has contacted and attempted to induce them to breach their existing contracts and business relationship with ORIGINAL.

**FIRST CAUSE OF ACTION:**
**(Copyright Infringement)**

50. ORIGINAL incorporates and realleges paragraphs 1 through 49 of this Complaint.

51. Defendants, without authority, are making, causing to be made, and purporting to authorize the making of unauthorized copies of Plaintiffs' registered copyrighted visual works. Defendants' conduct constitutes direct infringement of Plaintiffs' exclusive rights under the Copyright Act to reproduce its copyrighted visual works.

-13-

52.     Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifference to the rights of Plaintiffs.

53.     As a direct and proximate result of Defendants' infringement of its copyrights and exclusive rights under copyright, Plaintiffs is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c).  Alternatively, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to its actual damages plus Defendants' profits from infringement.

54.     Plaintiffs is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

55.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury for which it cannot be fully monetarily compensated. Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs is entitled to a permanent injunction barring Defendants continued infringement.

## SECOND CAUSE OF ACTION:
### (Copyright Infringement)

56.     ORIGINAL incorporates and realleges paragraphs 1 through 55 of this Complaint.

57.     Defendants, without the permission of consent of the Plaintiffs and without authority, are publicly displaying Plaintiffs' registered copyrighted visual works.  Defendants cause these works to be publicly displayed by posting them on the website available at the domain name WWW.LOGCABINHOMESUSA.COM.   Upon understanding and belief, Defendants are also making these protected works available through a marketing brochure. Defendants' conduct constitutes direct infringement of Plaintiffs' exclusive rights under the Copyright Act to publicly display its copyrighted visual works.

-14-

58. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifference to the rights of Plaintiffs.

59. As a direct and proximate result of Defendants' infringement of its copyrights and exclusive rights under copyright, Plaintiffs is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to its actual damages plus Defendants' profits from infringement.

60. Plaintiffs is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

61. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury for which it cannot be fully monetarily compensated. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs is entitled to a permanent injunction barring Defendants continued infringement.

### THIRD CAUSE OF ACTION:
### (Lanham Act)

62. ORIGINAL incorporates and realleges paragraphs 1 through 61 of this Complaint.

63. Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), prohibits, *inter alia*, any "false or misleading description of fact, or false misleading representation of fact which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities . . . of . . . goods, services, or commercial activities."

64. USA's marketing campaign makes false and misleading claims that the architectural renderings and floor plans on its website and brochure are for log cabin homes manufactured, sold and built by USA .

-15-

65.     USA's false claims constitute false descriptions and deceptive and misleading representations in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a), which prohibits Defendants from falsely advertising its goods in interstate commerce.

66.     Defendants' false descriptions and false, deceptive and misleading representations were knowing, intentional, malicious, deliberate, willful, wanton, reckless and egregious and were and continue to be carried out with the intent to cause confusion, mistake or deception.

67.     Upon information and belief, the false descriptions and false, deceptive and misleading representations have a tendency to deceive, and have actually deceived a substantial segment of USA's intended audience.

68.     USA's false and misleading claims have appeared in commercial advertising or promotion, including, but not limited to, brochures and the Internet, and are therefore in interstate commerce.

69.     USA's false and misleading advertisements and statements are material to consumers' purchasing decisions.

70.     As a result of USA's intentional, deliberate, and willful actions, ORIGINAL and the public have been injured, and unless USA is enjoined by this Court and ordered to retract and correct its false and misleading advertisements and statements, USA's statements will continue to cause ORIGINAL to suffer a loss of consumer confidence, sales, profits, and goodwill, along with the cost of remedial corrective advertising, much of which loss is, and will be, irreparable. The exact nature and extent of ORIGINAL's injury can not be ascertained at this time.

71.     This is an exceptional case under 15 U.S.C. §1117.

-16-

## FOURTH CAUSE OF ACTION:
## (Lanham Act)

72.     ORIGINAL incorporates and realleges paragraphs 1 through 71 of this Complaint.

73.     USA has used material false and misleading descriptions and/or representations of fact in commercial advertising and promotions about the nature and characteristics of their products.

74.      USA's marketing campaign makes false and misleading claims that the various photographs on its website are of products manufactured, sold or constructed by USA on its site in South West Scotland.

75.     USA's false claims constitute false descriptions and deceptive and misleading representations in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a), which prohibits Defendants from falsely advertising its goods in interstate commerce.

76.     Defendants' false descriptions and false, deceptive and misleading representations were knowing, intentional, malicious, deliberate, willful, wanton, reckless and egregious and were and continue to be carried out with the intent to cause confusion, mistake or deception.

77.     Upon information and belief, the false descriptions and false, deceptive and misleading representations have a tendency to deceive, and have actually deceived a substantial segment of USA's intended audience.

78.     USA's false and misleading origin claims have appeared in commercial advertising or promotion, including, but not limited to, product brochures and the Internet, and are therefore in interstate commerce.

79.     USA's false and misleading advertisements and statements about the origin of its product are material to consumers' purchasing decisions.

-17-

80.     As a result of USA's intentional, deliberate, and willful actions, ORIGINAL and the public have been injured, and unless USA is enjoined by this Court and ordered to retract and correct its false and misleading advertisements and statements, USA's statements will continue to cause ORIGINAL to suffer a loss of consumer confidence, sales, profits, and goodwill, along with the cost of remedial corrective advertising, much of which loss is, and will be, irreparable. The exact nature and extent of ORIGINAL's injury can not be ascertained at this time.

81.     This is an exceptional case under 15 U.S.C. §1117.

### FIFTH CAUSE OF ACTION:
### (Lanham Act)

82.     ORIGINAL realleges paragraphs 1 through 81 as if fully set forth herein.

83.     USA's use of ORIGINAL's Log Cabin Homes USA trade name, the domain name WWW.LOGCABINHOMESUSA.COM and/or statements to the effect that it is affiliated, connected or associated with ORIGINAL, constitutes false designation of the origin as to the goods and services made available by Defendants and is a false and misleading representation in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a), causing injury to ORIGINAL.

84.     By, among other things, marketing log cabin homes to consumers throughout the United States and internationally, USA causes them and their advertising to enter into commerce and to be transported and used in commerce, within the meaning of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

85.     USA's false and misleading misrepresentations regarding the origin, sponsorship and/or approval of their products is likely to cause and actually has caused confusion, mistake and deception among consumers throughout the United States as to the affiliation, connection or association of ORIGINAL and USA, or as to the origin sponsorship or approval of USA's log cabin home products.

-18-

86.    Defendants' conduct has caused and will continue to cause significant financial and reputational injury to ORIGINAL and will, unless restrained by this Court, further impair, if not destroy, the value of the trade name and its business reputation and goodwill.

87.    Defendants' continuing unfair competition relating to the use of ORIGINAL's trade name is knowing, intentional, malicious, deliberate, willful, wanton, reckless and egregious and is being carried out with the intent to cause confusion, mistake or deception.  USA's actions constitute a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

88.    This is an exceptional case under 15 U.S.C. §1117.

## SIXTH CAUSE OF ACTION:
### (Trademark Infringement)

89.    ORIGINAL incorporates and realleges paragraphs 1 through 88 above.

90.    Plaintiffs are the owner of THE ORIGINAL LOG CABIN HOMES trademark and of an incontestable registration for the same.  Additionally, ORIGINAL has used the trade name LOG CABIN HOMES USA in connection with its business since in or about 1989.

91.    Defendants have used and continue to use the Log Cabin Homes USA name for their company in interstate commerce without Plaintiffs' consent.

92.    Defendants' unauthorized and wrongful use and threatened continued use of a name and mark substantially similar or virtually identical to Plaintiffs' name and registered mark THE ORIGINAL LOG CABIN HOMES  and its trade name Log Cabin Homes USA in connection with the advertising, manufacture and sales of log cabin homes is likely to cause confusion and mistake and to deceive members of the public and trade as to the origin, sponsorship and affiliation of Defendants' services and its business in connection therewith.

93.    As a result of such unauthorized use, members of the public are likely to believe that Defendants' products are part of, or are sponsored, licensed, approved or authorized by or is

-19-

related to or otherwise affiliated or connected with Plaintiffs' THE ORIGINAL LOG CABIN HOMES and LOG CABIN HOMES USA trade name and trademark; that Defendants are ORIGINAL's company, subsidiary, affiliate, or otherwise that their services are those of Plaintiffs'.

94.     Defendants' commercial use of the name LOG CABIN HOMES USA, alone and in combination with other elements, constitutes trademark infringement in violation of Sections 32 and 34 of the Lanham Act, 15 U.S.C. §§1114 and 1116.

95.     Defendants' actions have been and are willful or, at least, in reckless disregard of Plaintiffs' superior rights.

96.     Defendants' wrongful acts have caused and, unless enjoined, will continue to cause Plaintiffs injury.

## SEVENTH CAUSE OF ACTION:
### (New York Unfair or Deceptive Business Practices)

97.     ORIGINAL incorporates and realleges paragraphs 1 through 96 of this Complaint.

98.     By making false, misleading and unsubstantiated claims regarding the content, and origin of its log cabin home products, USA has engaged in fraudulent conduct in connection with the sale and advertisement of merchandise, in violation of New York's deceptive trade practices statute, N.Y. GEN. BUS. LAW §§ 349, 350.

99.     USA has used false statements and misrepresentations of material facts about the content, and origin of its log cabin home products, with the intent that consumers rely on those statements in connection with the sale and advertisement of the product.

100.    Consumers relying on the false statements and representations made by USA have been misled by them and, upon information and belief, are likely to be so misled in the future.

-20-

101.	The general public is likely to be damaged as a result of the deceptive trade practices or acts and false advertising engaged in by USA.

102.	USA's actions as set forth above constitute a willful, wanton and deliberate fraudulent consumer practice.

103.	As a result of USA's intentional, deliberate, and willful actions, ORIGINAL and the public have suffered irreparable injury, the exact nature and extent of which cannot be ascertained at this time, and for which there is no adequate remedy at law.  Unless USA's actions are restrained by this Court, they may further impair, if not destroy, the value of the trade name and ORIGINAL's business reputation and goodwill

**EIGHTH CAUSE OF ACTION:**
**(Common Law Unfair Competition)**

104.	ORIGINAL hereby incorporates and realleges paragraphs 1 through 103 of this Complaint.

105.	USA's actions constitute unfair methods of competition in violation of the common law of New York.

106.	USA's actions as set forth above constitute a willful and deliberate engagement in methods of competition and trade practices it knows to be unfair and deceptive.

107.	As a result of USA's intentional, deliberate, and willful actions, ORIGINAL and the public have suffered irreparable injury, the exact nature and extent of which cannot be ascertained at this time, and for which there is no adequate remedy at law.

**NINTH CAUSE OF ACTION**
**(Misappropriation of Trade Secrets)**

108.	ORIGINAL realleges paragraphs 1 through 107 as if fully set forth herein.

Case 5:07-cv-00504-FL   Document 1   Filed 11/15/07   Page 21 of 26

109.     ORIGINAL's highly proprietary customer information is a valuable trade secret owned exclusively by the Plaintiffs.

110.     This trade secret was known only to Plaintiffs and is not disseminated outside of the company.  ORIGINAL has a duty to maintain the confidentiality of its customer information and vigorously does so.

111.     USA was aware at all times of the confidential nature of ORIGINAL's customer information and trade secrets.

112.     USA's willful misappropriation of ORIGINAL's customer information and trade secrets and subsequent misuse of the trade secrets without Plaintiffs' permission, constitutes a violation of the New York law of trade secrets.

113.     As a direct and proximate result of USA's intentional misappropriation and misuse of ORIGINAL's trade secrets, Plaintiffs has been damaged in an amount not yet fully determined.

## TENTH CAUSE OF ACTION:
### (Tortious Interference With Existing Contracts)

114.     ORIGINAL realleges paragraphs 1 through 113 as if fully set forth herein.

115.     Upon information and belief, USA knew of the existence of the agreements between ORIGINAL and its customers prior to its entering into agreements with ORIGINAL's customers.

116.     By entering into the subsequent agreements with ORIGINAL's customers, USA has wrongfully and without justification tortiously interfered with ORIGINAL's agreements with its customers and induced and procured a breach thereof, thereby destroying the ability of ORIGINAL to provide services and earn continued payments under the agreements.

-22-

117.    ORIGINAL has suffered, and continues to suffer, monetary damages as a result of USA's tortious interference with its agreements with its customers.

## ELEVENTH CAUSE OF ACTION:
## (Tortious Interference With Continuing Business Relations)

118.    ORIGINAL realleges paragraphs 1 through 117 as if fully set forth herein.

119.    Upon information and belief, USA knew of the existence of the continuing business relationship between ORIGINAL and its customers and contacts prior to the execution of its agreements with ORIGINAL's customers or its approaches to ORIGINAL's contacts.

120.    By entering into agreements and approaching ORIGINAL's customers and contacts, USA has intentionally and without justification tortiously interfered with ORIGINAL's continuing business relationships. Furthermore, USA, by inducing ORIGINAL's customers to discontinue their business relationship with ORIGINAL, thereby is destroying the ability of ORIGINAL to provide services and earn continued payments under said business relationship.

121.    ORIGINAL has suffered and continues to suffer monetary damages as a result of USA's tortious interference with its continuing business relations with its customers in an amount not yet fully determined.

## TWEVELTH CAUSE OF ACTION:
## (Unjust Enrichment)

122.    ORIGINAL realleges paragraphs 1 through 121 as if fully set forth herein.

123.    USA benefited from its wrongful acts because it was the recipient of  the benefit of ORIGINAL's reputation and good will, product renderings, floor plans, marketing and other materials, due to customer confusion and deception on USA's behalf.

124.  Defendants benefited from its access to and use of ORIGINAL's proprietary customer information because, upon information and belief, they used this information in order to persuade ORIGINAL's customers to purchase products offered by USA.

125.  USA did not pay ORIGINAL for the benefits it derived from access to ORIGINAL's customer information.

126.  Defendants' use of the ORIGINAL customer information, copyright and trademark protected rights was to the direct detriment of ORIGINAL.  The customer information gave USA a competitive advantage in the market for custom log cabin homes, which it did not previously possess.  Moreover, such data would have been extremely valuable to other companies and would have commanded a high price if it had been sold commercially. Furthermore, ORIGINAL has spent more than 20 years developing the extremely valuable good will associated with its name and products which USA is not attempting to usurp.

127.  As a proximate result of its receipt of illegal and improper orders and payments, USA was unjustly enriched at the expense of ORIGINAL in an amount not yet fully determined.

128.  ORIGINAL has suffered and continues to suffer monetary damages as a result of USA's actions in an amount not yet fully determined.

## PRAYER FOR PRELIMINARY AND PERMANENT RELIEF

129.  ORIGINAL requests that the Court issue a Temporary Restraining Order and preliminary and permanent injunction ordering USA, its officers, officers, agents, employees and all other persons or entities acting in concert with it, to immediately cease the circulation of, and to withdraw all advertising material and packaging:  (a) that in any way implies or suggests that USA or its products are in any way connected, affiliated or has a business relationship with ORIGINAL; (b) that in any way implies or suggests that the photographs of ORIGINAL's

-24-

custom log cabin homes appearing on USA's website and brochure are products manufactured, sold or constructed by USA; and (c) that in any way implies or suggests that the ORIGINAL copyright protected architectural renderings and floor plans showcased on USA's website and brochure are products manufactured, sold or constructed by USA.

130.    ORIGINAL requests that the Court issue an Order that USA must immediately cease and desist for using any works owned by ORIGINAL which are protected by a registered copyright or otherwise.

131.    ORIGINAL requests that the Court issue an Order that USA must immediately cease and desist for using the Log Cabin Homes USA name and WWW.LOGCABINHOMESUSA.COM website or trade name or domain name substantially or confusingly similar to the ORIGINAL Mark or its website with the domain name WWW.LOGCABINHOMES.COM, and that the WWW.LOGCABINHOMESUSA.COM domain name is immediately transferred to ORIGINAL.

132.    ORIGINAL requests that the Court issue an Order that USA take all reasonable steps necessary to contact all prior recipients of communications containing any false statements and misrepresentations concerning ORIGINAL and to correct them; and

133.    Judgment on all its claims for damages suffered by ORIGINAL by reason of USA's copyright infringement, false, deceptive and misleading advertising, unfair competition, deceptive acts and practices, trademark infringement, misappropriation of trade secrets, tortious interference and unjust enrichment in an amount to be determined at trial; and

134.    That Defendants be required to pay ORIGINAL the costs and disbursements associated with the claims set forth herein; and

135.    That Defendants be required to prepare an accounting; and

-25-

136. ORIGINAL also requests that the Court: award ORIGINAL relief pursuant to 15 U.S.C. § 1117 and the statutory laws of New York; all of defendant's profits derived from its unlawful conduct; all expenditures required to correct the false and misleading statements alleged herein; treble damages in accordance with 15 U.S.C. § 1117 and N.Y. GEN. BUS. LAW §§ 349, 350; the costs, including expenses and fees, of bringing this action; the attorney's fees incurred by ORIGINAL in this action; exemplary and punitive damages as appropriate to punish past willful conduct and to deter future willful conduct; pre-judgment and post-judgment interest on the foregoing sums; and grant such other and further relief as the Court deems just and proper.

137. That Defendants be required to pay the attorneys' fees of ORIGINAL resulting from Defendants' malicious, fraudulent, deliberate, willful, wanton, reckless and egregious acts intending to cause confusion, mistake or deception; and

138. Awarding Plaintiffs such further relief as to the Court appears just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs respectfully demand a trial by jury on all issues triable by right to a jury.

Dated: New York, New York
      November 15, 2007

                            Respectfully submitted,

                            _____/SFK/_____
                            Sean F. Kane (SK 4568)
                            DRAKEFORD & KANE LLC
                            475 Park Avenue South, 15th Floor
                            New York, New York 10016
                            (212) 696-0010

                            *Attorneys for Plaintiffs*